Mr. Dimiceli was found guilty after a 10 day jury trial of mortgage fraud, bail fraud and making false statements on a loan application. The issue is, one of the primary issues here is the issue of sentencing. And it was the issue of loss calculation. It was a sustained level of enhancement applied under the guidelines under section 2B1.1. And that resulted in a considerably higher guideline range sentence. In this case, the pre-sentence report actually recommended that the loss be calculated. Certainly now, the trial judge followed that in sentencing, correct? The trial judge did follow that in sentencing. And the attorney elected not to challenge that ultimately, not to challenge that. So it wasn't a factual determination. It was a legal determination as to that sustained level of enhancement. And there was a, our contention is this material miscalculation in the advisory guideline range. Because the question is the loss amount. And loss amount here is there was no proof that the bank or any financial institution suffered an actual loss. And in order for there to. . . Does it be an actual loss or a deemed loss? Well, there's different formulas for calculating that the court has allowed. But in United States v. Berger, what the court held specifically is the threshold matter, the threshold matter that you have to have is an actual loss. So in U.S. v. Morris, we said that the first step in the analysis is to calculate the greater of actual or intended loss. So if the actual loss is zero, the intended loss is greater. So presumably, you're not saying that the actual loss was more than the intended loss if there isn't any actual loss shown. So what's wrong with taking the intended loss and trying to gain the foreclosed value of the properties? Because I think even in the United States v. Morris, there was, as a prerequisite, even if you are looking at the actual greater or actual or intended loss, there's always the actual loss has to be shown.  In U.S. v. Morris, the court held the first step was to calculate the greater of actual or intended loss, where actual loss is a reasonably foreseeable pecuniary harm or fraud. Counsel, let me just ask you one other question, which is more of a procedural matter. But it seems to me that there was the defense declined expressly. Do you have an evidentiary hearing on this? Hello. So how can you make this argument now on direct appeal when any problem that you're now referring to could have been cured if an evidentiary hearing had been held? I agree, Your Honor, in terms of there was a specific sheet. The attorney specifically declined to take to the court on his offer to hold an evidence hearing. So why doesn't that waive this argument before it happens? It wouldn't because what we're talking about here is the application of the guidelines of loss. We're not talking about a factual issue. What the evidentiary hearing was designed to do was essentially almost like a restitution hearing to see if any of those banks actually suffered an actual loss. Right. But you declined to have a hearing in which it could be demonstrated that there was an actual loss. So why are you entitled now, having refused to have a hearing to show the actual loss, to come in and say, ah-ha, there's no proof of an actual loss? That's the difficulty I'm having with this argument. I understand that. But the issue, I think, Your Honor, is the fact that as a legal question, and that's what we're talking about here, is there a material misapplication of the guidelines? And there was because there was no actual loss. I know that because your client didn't agree to have a hearing to determine whether there was or not. But I think the government didn't prove, didn't demonstrate any loss at the sentencing hearing. They would have had the burden at that time. They didn't present any evidence. But you gave up the right to argue that there was no actual loss, but not have a hearing in which the actual loss could have been determined. I guess that's my problem. I guess the way I'm viewing this isn't a question of there was, sure, the court. She did decline to hold this or take the court on its offer. But it still leaves the question as to how you properly calculate the guideline range. And if you're going to calculate the guideline range, you have to demonstrate that there is an actual loss. And if there is no demonstration of an actual loss, it's just a- Why under Morris where it says you can start by doing the intended loss if it's bigger? And if you're saying actual loss is zero, I know Judge Graber already asked this question. How is your argument you're making reconcilable with Morris? Because I think Morris, and you have to look at Morris and reconcile that with Berger. What we have here is we're talking about even in Morris that there actually has to be an actual loss. We can look at it as the greater of actual or intended loss. But there always has to be an actual loss here. And that was what the Berger court said. The United States sentencing guidelines courts may employ various methodologies to determine loss. And loss need not be established with precision. The fact the court may need only make a reasonable estimate of loss. But- The statement of actual loss, there was actual loss described in the pre-sentence report, if I'm not mistaken. And if I'm right about that, why isn't that sufficient to establish for purposes of this appeal that there was some actual loss that occurred? Because I think what the court had found is the court never specifically made that finding. The court even agreed when the defendant was making the argument that there was no actual loss. The court even stated- But our court has held that the pre-sentence report has evidentiary value. I understand that. But in terms of what the court had actually held or said in that moment when the defense attorney was arguing, essentially that there wasn't an actual loss. The court agreed with it or said there certainly hasn't been a loss here that's actually been proven. And there wasn't- the probation officer wasn't available that day to even- that's why the court wanted to put that off. At that time, the probation officer wasn't even available to explain the pre-sentence report or how they derived it in any type of calculation. Well, it was a calculation, and there was not an objection by the defense, correct? There was- my understanding is that there wasn't an actual loss that was actually calculated or presented by the government. And so that there wasn't an actual loss there, without an actual loss, there wouldn't be a way to determine that 16-level enhancement. But in reading the transcript of the sentencing hearing, the judge actually goes through the calculations under the guidelines. The offense level is 25, the criminal history category, and then a range. And, of course, that takes into consideration this loss amount that the court was considering. No objection to that. Right. They're applying the 16-level enhancement, but that was based upon- it wasn't based upon an actual loss. It was a 16-level enhancement. That 16-level enhancement was based upon how the probation officer calculated using whatever methodology that they used. Well, you're saying that the time for the defense to object it, making the argument that you're presenting now was right at that moment when the judge is now explaining how the sentence is being calculated. I agree that the defense at that time should have objected at that time, but the court can certainly review this under plain error, and if there is no loss- But wasn't this approach to calculating loss the same approach that the United States v. Hymas case upheld in your court? It seems like you have an objection to this methodology, but we've upheld this methodology. Well, my argument is basically under Berger, which I think extends far beyond the securities fraud case. Berger held specifically that it does not obviate the requirement to show that actual defendant-caused loss occurred. That's a prerequisite. Before you can get into anything else with projected loss or anticipated loss or any other form of loss or any other calculation, you still have to meet that threshold requirement under Berger, and that hasn't been met yet. It sounds like you have just about used your time, but you may have one minute for a couple of questions. Mr. Gamble? May it please the Court? The government's position with regard to the calculation of loss is that there was actual loss demonstrated at trial. The banks certainly planted money on these fraudulent loans, and that was the actual loss. The government then provided to the probation officer the foreclosure of recovery amounts, essentially the second part of the Morris calculation, and so the probation officer absolutely correctly calculated the loss amount for the purposes of 2B1.1 under this court's precedence. Once the district court rejected the proposed bundling theory, which would have eliminated any, quote, unquote, actual loss, then the trial counsel had to concede that she had no evidence to rebut the information that the government had provided to the probation officer regarding the foreclosure sales, and as a result, the PSR is a big calculation. It's essentially unrebutted. And Berger is certainly distinguishable from this case because the Berger problem was in the methodology of calculating loss based on extrapolating what happened in other cases to essentially the securities fraud loss. And in this case, the probation officer, the court, everyone, even the defense acknowledged that the proper way to calculate loss was Morris' famous method that has been approved over and over in this court. And based on this sentencing calculation, which the defense ultimately agreed to, the district court properly conducted an individualized sentencing determination as to these two defendants and sentenced the two defendants in a way that was not disparate and therefore completely proper. If the court has no further questions, go for it. I'd like to ask you about the equal protection claim about incentives. So it seems like you've argued this thing about whether it's a committed fine. If we don't agree with you that it matters whether it's a committed fine, can you offer any other argument of why this wasn't improper under the equal protection clause? Certainly, Your Honor. A district judge, when closing a fine, has its part in analysis. It has to decide first whether a fine is proper, and then second, if the fine is proper, the amount of the fine. And that's precisely what the district court did in this case. The district court asked Mr. Calton's attorney, is the fine proper in this case? The attorney said yes. Probation had, in fact, recommended a fine. It then proceeded to do its analysis with regard to the amount of the fine. With regard to Ms. Gimaselli, again, the district court did an individualized calculation and discussion with regard to Ms. Gimaselli's and Mr. Calton's and determined that a fine was not appropriate and therefore imposed no fine. And with regard to, of course, the committed fine line of cases, that referred to a practice of imposing a fine in every case, essentially. And when it came time for release of a prisoner, if the prisoner had not paid off the fine or was unable to pay off the fine, the prisoner was held in custody for X number of days to satisfy the fine. And that certainly did not occur here because no fine, in fact, was imposed on Ms. Gimaselli. But isn't that part of the allegation that because she couldn't afford to pay a fine, she had a much longer prison sentence? And isn't that at least a colorable equal protection problem? It is. It's the allegation, and it is a colorable equal protection allegation. If the district court had specifically said, hey, there's going to be a trade-off here. Either you're rich and you can pay a fine, and I'm going to reduce your sentence, or you can't pay a fine, so I'm going to increase your sentence. The district court said the opposite. And I just want to be clear, this is not the reason for the sentence difference. One, she got three times as much out of the scheme, and he had an exemplary life and various other thoughts as to what the difference was going to be. That's correct, Your Honor. The district court made a very clear record that she was sentencing these two defendants separately, even though they were co-defendants. And that there were separate sets of consideration that went into crafting the sentence. Is there any basis for just believing the court's assertion that the ability to pay on the part of the other defendant did not play any role? Yes, Your Honor. In Scott's statement, Mr. Kaufman's sentence, the district court made a specific finding. No, I agree that there are too many negatives in those things. The court said that's not the reason for her longer sentence. Do we have to believe that? Or should we be skeptical of that? And how do we assess what the district court said about the defendant's crime? The government's response was we simply read the transcript. Are there some pieces of the transcript, though, where it sounds like the court is looking at how much fine there could be and how that balances with the prison sentence as a whole? So in some places, I think the court definitely said, I'm not doing that, but in other places, it seems like the court kind of did say that's what they were doing. Respectfully, no, Your Honor. The district court is discussing the fine and saying that it is punishment and that it will hurt. It's doing the second part of the fine analysis. It is determining, based on Mr. Kaufman's ability to pay a fine, it's already determined that he has the ability to pay a fine. It's trying to determine what amount of fine is just. And so that is why he is discussing, I know, you know, I have to impose a fine, so the fine has to be punishment, et cetera, et cetera. And then with respect to Ms. DiMassali, the district court is very specific with regards to some of the reasons why he's imposing the sentence on her, and that is her having benefited more from the crime and the greater need to deter her, as opposed to Mr. Kaufman, her greater role in the offense. The discussion of the witness who testified regarding Ms. DiMassali's role in the crime, which we did not have similar evidence against Mr. Kaufman. And then, in addition, the district judge does mention that he felt that she was not expressing remorse during her colloquy. In the pre-sentence report for the codependent, does probation recommend any custody time or only a fine? Probation did recommend a custodial sentence, and the government certainly argued forcefully for a custodial sentence. But as this court has stated over and over, district courts enjoy a broad range of discretion when making sentencing determinations, and this district court stated its reasons specifically as to each defendant and conducted the type of individualized sentencing decision that this court has upheld over and over. Did the pre-sentence report recommend a fine for Ms. DiMassali? No, Your Honor. And for these reasons and the reasons stated in our brief, we would ask that this court affirm the conviction and sentence. Thank you. Thank you, counsel. Mr. Kaufman, did you have one minute for a follow-up? Thank you, Your Honor. Just with regards to the equal protection argument, I would submit a couple of things here. There wasn't three times as much in terms of what Ms. DiMassali was alleged to have received. There was another $270,000, which she was splitting with a partner. Mr. Kauffman's was $112,000. So that's not a substantial variance. And the issue was brought up that Ms. DiMassali wasn't accepting remorse, wasn't showing remorse or accepting responsibility at the end. She made a statement saying she was innocent, in which the judge didn't discredit that. He said, you testified. You spoke very eloquently. You should have testified. You should have got up here and actually said this. Unfortunately, I have decided to, based on the fact that the judge found you guilty. But you never. That's correct. Right? You never chastised her for asserting her innocence. Mr. Kauffman, he gave you a sentencing statement, also said he was innocent. And the judge made similar comments to you, although he wasn't as eloquent and she wasn't presenting her in a situation. So what we're talking about here is the sentencing was about six times as great and she had issues as well, health issues. She lived an exemplary life. She had raised children. She put this for her life, basically, on the record as well. And all of that evidence was before the sentencing judge. It was. And we assumed that in consideration in imposing the sentence. And which leads us now to the essential element that there was a big fine, a $350,000 fine, that Mr. Kauffman was able to pay and Ms. Giuselli was not. And because of that basis, we wind up with this type of situation and this disparity here. Counselor, you've exceeded your time, and I think we understand your argument. We'll get in support of it. Thank you very much. Thank you. The case just started. It's submitted. We appreciate very much the arguments of both counsel. And we hope that we'll see you back for this morning's session.
judges: Graber, Friedland, Marshall